IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

YURI J. STOYANOV

       v.

RAY MABUS, SECRETARY OF
THE NAVY, et al.

       :
       :
       :  Civil Action No. DKC 07-1985
       :
       :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case are several motions: a motion to dismiss or, in the alternative, for summary judgment filed by Defendants Ray Mabus, et al. (ECF No. 25); two motions to compel filed by Plaintiff Yuri J. Stoyanov (ECF Nos. 29 and 30); a motion to sequester a witness filed by Plaintiff (ECF No. 31); and a motion to disqualify counsel filed by Plaintiff (ECF No. 32). The relevant issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendants' motion will be granted in part and denied in part. Plaintiff's motions will be denied.

**I.   Background**

Plaintiff, proceeding *pro se*, commenced this action on July 25, 2007, by filing a complaint against Donald Winter, who was

at that time Secretary of the Navy, and eleven other Defendants.[1]
This case is one of more than a dozen suits filed by Plaintiff
and his twin brother, Aleksandr, against many of the same
Defendants.[2]   The Stoyanovs were born in Russia in 1955.
Plaintiff has worked as a scientist at the U.S. Navy's Naval
Surface Warfare Center, Carderock Division ("NSWCCD") from 1987
to present.  Aleksandr worked there as a scientist from 1989 to
2003.  In each lawsuit, the brothers allege that they were
discriminated against in a variety of ways because of their age,
national origin, and in retaliation for filing charges of
discrimination.   In this case, as in all others prior, the
alleged discrimination and retaliation took the form of, *inter
alia*, denied promotions and restrictions placed on the brothers'
ability to pursue claims they were bringing before the Equal
Employment Opportunity Commission ("EEOC").   In each case in

---

[1]  Ray Mabus, the current Secretary of the Navy, has
subsequently been substituted for Donald Winter as the proper
Defendant pursuant to Fed.R.Civ.P. 25(d).

[2] Defendant Charles Behrle, Head of the Carderock Division
of NSWCCD; Gary Jebsen, Head of the Signatures Directorate (Code
70); Kevin Wilson, Head of the Electromagnetic Signature
Technology Division (Code 74); Bruce Crock, Head of the
Signatures Engineering and Integration Branch (Code 743); David
Caron, Assistant Counsel (Code 39); Catherine Kessmeier, Counsel
(Code 40); Garth Jensen, Deputy Head of the Signatures
Directorate (Code 70); Mary (Cathy) Fowler, Administrative
Officer of the Signatures Directorate (Code 70); Kenneth Forman,
Head of the Signatures Directorate (Code 73); Kenneth Goldman,
Head of the Signatures Directorate (Code 71); and Defendant
Archer Macy, Head of the Naval Surface Warfare Center.

which a dispositive motion has been filed, Plaintiff's claims have either been dismissed or summary judgment has been entered against Plaintiff, and the United States Court of Appeals for the Fourth Circuit has upheld those decisions.[3]

Because the cases Plaintiff and his brother filed had become so voluminous, the court entered an order restricting the brothers to one active case at a time. Accordingly, this case was placed on the inactive-unassigned docket on August 7, 2007. (ECF No. 2). Upon Plaintiff's motion, the case was reactivated and reassigned to the active docket on December 23, 2013. (ECF No. 11).

Here, Plaintiff alleges many of the same acts of discrimination and retaliation as he presented in his previous suits, namely that:

> On the basis of his age, national origin and/or retaliation for his having engaged in protected activity, the Navy refused to promote or reassign plaintiff. Plaintiff feels aggrieved by his inability to secure a promotion to an ND-5 level position, or a reassignment that might lead to a better opportunity for such a promotion, in some

---

[3] *Stoyanov v. Mabus,* No. DKC 07-1953, 2013 WL 1104978 (D.Md. Mar. 15, 2013), *aff'd sub nom. Stoyanov v. Behrle,* 540 F.App'x 167 (4th Cir. 2013); *Stoyanov v. Mabus,* No. WMN-07-1863, 2011 WL 4397492 (D.Md. Sept. 20, 2011), *aff'd sub nom. Stoyanov v. Behrle,* 470 F. App'x 128 (4th Cir. 2012); *Stoyanov v. Mabus,* No. WDQ-07-1764, 2009 WL 4884518 (D.Md. Dec. 9, 2009), *aff'd,* 385 F. App'x 297 (4th Cir. 2010); *Stoyanov v. Winter,* No. AMD 06-1244, 2008 WL 6722765 (D.Md. Aug. 11, 2008), *aff'd* 305 F.App'x 945 (4th Cir. 2009).

cases because he was allegedly denied the opportunity to apply and in other because another candidate was selected over plaintiff. He essentially argues that every occasion on which an ND-5 vacancy became available and he was not promoted was an incident of discrimination.

*Stoyanov v. Winter,* No. AMD-06-1244, 2008 WL 6722765, at *2 (D.Md. Aug. 11, 2008). Plaintiff's current claims span the time period of August 2005 to October 2005. His allegations involve thirteen different incidents, which Plaintiff identifies as thirteen claims. For clarity, these will be called "Incidents." A summary of the Incidents will be provided here:

> Incident #1 — Defendant Gary Jebsen denied Plaintiff an ND-5 Program Manager position that was assigned to Aisha Jenkins on September 6, 2005.
>
> Incident #2 — Defendants Bruce Crock and Gary Jebsen gave Plaintiff a Notice of Proposed Suspension on September 7, 2005.
>
> Incident #3 — Defendant Charles Behrle authorized the Notice of Proposed Suspension.
>
> Incident #4 — Defendant Archer Macy denied Plaintiff's request on September 9, 2005 to rescind the Notice of Proposed Suspension.
>
> Incident #5 — Defendants Bruce crock and Gary Jebsen denied Plaintiff's request on September 14, 2005 for official time to respond to the Notice of Proposed Suspension.
>
> Incident #6 — Defendants Bruce Crock and Gary Jebsen denied Plaintiff's request on October 5, 2005 for official time to discuss

a new EEO discrimination complaint with EEO
Counselor Mr. R. Metler.

Incident #7 — Plaintiff learned on August
29, 2005 that Defendant Gary Jebsen had
changed Plaintiff's bargaining unit status
code from 8888 (managerial, supervisory) to
7777 (non-managerial, non-supervisory,
general schedule).

Incident #8 — Plaintiff learned on September
23, 2005 that Gary Jebsen denied Plaintiff
an ND-5 Program Manager position that was
assigned to Michael Monkevich.

Incident #9 — Plaintiff learned on September
23, 2005 that Gary Jebsen denied Plaintiff
an ND-5 Program Manager position that was
assigned to John Wojno.

Incident #10 — Plaintiff learned on
September 23, 2005 that Gary Jebsen denied
Plaintiff an ND-5 Program Manager position
that was assigned to Drew Meyer.

Incident #11 — Plaintiff learned on
September 23, 2005 that Gary Jebsen denied
Plaintiff an ND-5 Program Manager position
that was assigned to Michael Schildt.

Incident #12 — Plaintiff learned on
September 23, 2005 that Gary Jebsen denied
Plaintiff an ND-5 Program Manager position
that was assigned to Robert Green.

Incident #13 — Plaintiff learned on
September 23, 2005 that Gary Jebsen denied
Plaintiff an ND-5 Program Manager position
that was assigned to Joseph Hollman.

(ECF No. 1, at 22-24).   Based on these allegations, Plaintiff

asserts fourteen counts against the Secretary of the Navy, Ray

Mabus, and the various other Defendants who are supervisors and

individuals affiliated with NSWCCD:

Count I — Violation of Title VII (National Origin)

Count II — Violation of Title VII (Retaliation)

Count III — Violation of the Age Discrimination in Employment Act of 1967 ("ADEA")

Count IV — Violation of the Whistleblower Protection Act of 1989

Count V — Conspiracy to Violate Civil Rights

Count VI — Aiding and Abetting Violations of Civil Rights Laws

Count VII — Obstruction of Official Process

Count VIII — Abuse of Administrative Power

Count IX — Intentional Infliction of Emotional Distress

Count X — Fraud and Misrepresentations

Count XI — Obstruction of Justice by Defendant David Caron

Count XII — Malicious Abuse of Process

Count XIII — Violation of Plaintiff's Constitutional Rights Under the First Amendment (42 U.S.C. § 1983)

Count XIV — Violation of Plaintiff's Procedural and Substantive Due Process Rights (42 U.S.C. § 1983)

(ECF No. 1, at 29-44).

Defendants moved to dismiss or, in the alternative, for summary judgment on October 28, 2014. (ECF No. 25). On December 4, 2014, Plaintiff submitted: two motions to compel

(ECF Nos. 29 and 30); a motion to sequester a witness (ECF No. 31); and a motion to disqualify Defendants' counsel, John Sippel (ECF No. 32). Plaintiff opposed Defendants' motion to dismiss on February 12, 2015. (ECF No. 36).

## II. Defendants' Motion to Dismiss or for Summary Judgment

### A. Standards of Review

Defendants' motion is styled as a motion to dismiss or in the alternative for summary judgment. Defendants' arguments for dismissal of Plaintiff's various claims implicate different standards of review.

### 1. Dismissal Under Rule 12(b)(6)

Defendants seek dismissal of Counts IV through XIV arguing that the allegations in the complaint do not state plausible causes of action under these counts. The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of

further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver,* 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal,* 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979).

### 2. Dismissal Under Rule 12(b)(1)

Defendants move to dismiss Plaintiff's claims against all Defendants aside from Ray Mabus, arguing that the court lacks subject matter jurisdiction over the individual federal employees named in the complaint. A motion to dismiss for lack of subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1). Generally, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'" *Owens-Illinois, Inc.*

*v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (quoting 2 James Wm. Moore, et al., Moore's Federal Practice § 12.30[1] (3d ed. 1998)).  The plaintiff always bears the burden of proving that subject matter jurisdiction properly exists in federal court. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). In considering a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it "without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647.  The court should grant such a motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768.

### 3. Summary Judgment Under Rule 56

Defendants seek dismissal or, in the alternative, summary judgment of Plaintiff's Title VII and ADEA claims (Counts I through III).  Ordinarily, a court cannot consider matters outside the pleadings or resolve factual disputes when ruling on a Rule 12(b)(6) motion.  *See Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007).  If the court does consider matters outside of the pleadings, "the motion must be treated as one for summary judgment under Rule 56[.]"  Fed.R.Civ.P. 12(d).  Both

parties rely on materials outside the four corners of the complaint, thus the motion will be treated as one for summary judgment as to Counts I through III.

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397,

405 (4th Cir. 2005).   The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment.   *See Anderson,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

**B.   Analysis**

**1.   Motion to Dismiss Implausible Claims (Counts IV through XIV)**

In this case, Plaintiff brings many of the same claims and relies on the same theories that were rejected by other judges in this district, including Judges Bennett, Davis, Quarles, Nickerson, Blake, and the undersigned.   Because many of Plaintiff's claims are substantially similar to those raised in previous actions, they do not need to be discussed at length. *See Stoyanov v. Mabus,* No. DKC 07-1953, 2013 WL 1104978 (D.Md. Mar. 15, 2013), *aff'd sub nom. Stoyanov v. Behrle,* 540 F.App'x

167 (4th Cir. 2013); *Stoyanov v. Mabus,* No. WMN-07-1863, 2011 WL 4397492, at *6 (D.Md. Sept. 20, 2011).

Plaintiff's complaint asserts constitutional torts, common law torts, and claims under the Whistleblower Protection Act. As in prior suits, Plaintiff's claims are premised solely on allegations of national origin discrimination, age discrimination, and retaliation for EEO activities or complaints about the EEO process itself.  Judge Bennett previously held that "Title VII and the ADEA are the exclusive remedies available to a federal employee complaining of employment discrimination that is based on national origin, retaliation, and age." *Stoyanov v. Winter,* No. RDB-07-1611, 2006 WL 5838450, at *5 (D.Md. July 25, 2006); *see also Stoyanov v. Mabus,* No. DKC 07-1953, 2013 WL 1104978 (D.Md. Mar. 15, 2013), *aff'd sub nom. Stoyanov v. Behrle,* 540 F.App'x 167 (4th Cir. 2013). Accordingly, all but the first three counts of Plaintiff's complaint will be dismissed.  That is, only Plaintiff's claims for national origin discrimination and retaliation under Title VII (Counts I and II) and his age discrimination claims under the ADEA (Count III) will be discussed in detail.

### 2.  Motion to Dismiss Improper Defendants

Plaintiff has sued Defendants in their individual and official capacities.  Defendants moved to dismiss the claims against all Defendants aside from Ray Mabus, who is the

Secretary of the Navy, arguing that the court lacks jurisdiction over these federal employees as Plaintiff may only bring Title VII and ADEA claims against the head of the department or agency.  As noted by Judge Blake in a previous action:

> Title VII prohibits a plaintiff from filing an employment discrimination claim against an individual federal employee.  *See* 42 U.S.C. § 2000e-16(c) (requiring a plaintiff who files a civil action for employment discrimination to name the appropriate head of the department, agency, or unit as the defendant); *see also Simmons v. Shalala,* 946 F.Supp. 415, 418. (D.Md. 1996) ("The head of the department or agency is the only proper defendant" in a Title VII action claiming employment discrimination).

*Stoyanov v. Mabus,* No. CCB-06-2968, 2010 WL 4918700, at *4 (D.Md. Nov. 24, 2010); *see Norris v. Salazar,* 885 F.Supp.2d 402, 414 (D.D.C. 2012) (noting that "[t]he Equal Employment Opportunity Act grants federal employees the right to file suit in federal court, but only against the *proper* defendant" and dismissing an improperly named defendant under rule 12(b)(1) (emphasis in original); *Arbaugh v. Y & H Corp.,* 546 U.S. 500 (2006) (characterizing a statute that limits causes of action to specific defendants as "jurisdictional").  Similarly, although the ADEA does not specifically identify who must be named as proper party defendant, courts have found that the only proper defendant to a federal-sector age discrimination claim under the ADEA is the head of the agency or department.  *See Ellis v. United States Postal Service,* 784 F.2d 835, 838 (7th Cir. 1986)

13

(finding that although the ADEA does not specify that the head of the agency be named as the proper defendant in an age discrimination case against a federal agency employer, it should be construed consistently with Title VII and therefore, the only proper party defendant is the head of the agency); *see also Simmons v. Shalala,* 112 F.3d 510 (4th Cir. 1997) (citing *Ellis* with approval) (unpublished table decision).  Moreover, claims against these Defendants in their individual capacities as supervisors cannot be brought under Title VII and the ADEA. *Stoyanov v. Winter,* No. RDB-07-1611, 2006 WL 5838450, at *10 (D.Md. July 25, 2006) *10; *see also Lissau v. S. Food Svc., Inc.,* 159 F.3d 177, 180 (4th Cir. 1998) (holding that "supervisors are not liable in their individual capacities for Title VII violations"); *Birbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510-11 (4th Cir. 1994) (finding that the ADEA limits civil liability to the employer and therefore an employee may not be liable in their individual capacity under the ADEA). Accordingly, Ray Mabus, Secretary of the Navy, is the only proper Defendant against whom Plaintiff may bring his Title VII and ADEA claims.  The claims against the remaining Defendants will be dismissed.

3.    **Motion for Summary Judgment on Title VII and ADEA Discrimination Claims (Counts I and III)**

Title VII prohibits status-based discrimination based on an employee's personal characteristics such as "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a); *Univ. of Texas Sw. Med. Ctr. v. Nassar,* 133 S.Ct. 2517, 2525 (2013).  The ADEA prohibits employers from discriminating against employees or prospective employees because of the individual's age.  29 U.S.C. § 623(a).  The ADEA's protections apply to individuals at least forty (40) years of age, 29 U.S.C. § 631(a), and does not permit "a mixed-motives age discrimination claim." *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 175 (2009).  Instead, Plaintiff must "establish that age was the 'but-for' cause of the employer's adverse action." *Id.* at 177.

Plaintiff's employment discrimination claims under Title VII and the ADEA stem from the following instances: (1) Defendants' issuing Plaintiff a Notice of Proposed Suspension ("Notice") and denying his initial request for official time to respond to the Notice (Incidents 2-5); (2) Defendants' denial of additional official time for him to discuss a new EEO complaint with an EEO Counselor (Incident 6); (3) Defendants' change of Plaintiff's Bargaining Unit Status ("BUS") code (Incident 7). Plaintiff also asserts seven failure to promote claims, arguing

that he was discriminated against on seven occasions when Defendants failed to promote him to the ND-5 Program Manager position and instead promoted or assigned work to other employees who were allegedly less qualified than Plaintiff (Incidents 1 and 8-13).

To survive a motion for summary judgment, a plaintiff making Title VII claims must provide evidence of intentional discrimination through one of two avenues of proof: (1) direct or circumstantial evidence that discrimination motivated the employer's adverse employment decision, or (2) the *McDonnell Douglas* "pretext framework" that requires a plaintiff to show that the "employer's proffered permissible reason for taking an adverse employment action is actually a pretext for [discrimination]." *See Hill v. Lockheed Martin Logistics Management, Inc.,* 354 F.3d 277, 284-85 (4th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)). The *McDonnell Douglas* framework is also applied to age discrimination claims arising under the ADEA if the Plaintiff does not have direct evidence of discrimination. *See Hill v. Lockheed Martin Logistics Mgmt.,* 354 F.3d 277, 285 (4th Cir. 2003). Here, Plaintiff provides no direct evidence of discrimination for his Title VII or ADEA claims. Accordingly, he must rely on the *McDonnell Douglas* framework.

Under the *McDonnell Douglas* framework, once the plaintiff meets his initial burden of establishing a *prima facie* case for discrimination, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Hill*, 354 F.3d at 285. Once the employer meets this burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000)). "The final pretext inquiry merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination, which at all times remains with the plaintiff." *Merritt v. Old Dominion Freight Line, Inc.,* 601 F.3d 289, 294 (4th Cir. 2010) (internal quotation marks omitted).

**a.   Issuance of Notice of Proposed Suspension (Incidents 2 through 5), Denial of Time for EEO Complaint (Incident 6), and Change in Bargaining Status Unit (Incident 7)**

To establish a *prima facie* case of discrimination based on national origin or age, Plaintiff must show that (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he was subjected to an adverse employment action; and (4) similarly situated employees outside his class received more favorable treatment. *Texas Dep't. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981) (outlining elements

17

of *prima facie* case for national origin discrimination under Title VII); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d. 277, 285 (4th Cir. 2004) (outlining elements of *prima facie* case for age discrimination under the ADEA).

Plaintiff fails to establish a *prima facie* case of discrimination for Incidents 2 through 7 because, for each Incident, he fails to show that he was subjected to an adverse employment action. An adverse employment action is a discriminatory act that adversely affects the "terms, conditions, or benefits" of employment. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). Typically, an adverse employment action includes "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Gordin*, 178 F.3d 253, 255 (4th Cir. 1999). For the following reasons, Defendants' motion for summary judgment of Incidents 2 through 7 will be granted as to Counts I and III.

### i. Issuance of Notice of Proposed Suspension (Incidents 2 through 5)

On September 7, 2005, Bruce Crock, Plaintiff's supervisor, handed Plaintiff a Notice of Proposed Suspension ("Notice") that was based on charges that Plaintiff had misused official government time and resources. (ECF No. 25-6). The Notice explains that Plaintiff was given one hour of official work time

to work on EEO matters every Tuesday and Thursday from 9 a.m. until 10 a.m. (*Id.* at 2). The Notice states that Mr. Crock determined that Plaintiff had sent a fax pertaining to his EEO matter outside this authorized timeframe and from a fax machine located in a building where Plaintiff did not work. (*Id.* at 1-2). The Notice also indicates that Plaintiff used another employee's computer, without authorization, to work on an EEO matter outside of his authorized timeframe. (*Id.* at 2). The Notice explains that these incidents were not the first time that Plaintiff has conducted EEO business outside of the prescribed timeframes and used Government resources for personal business, and that Plaintiff has previously been warned about strictly observing the prescribed timeframes. (*Id.* ¶¶ 3-4). The Notice states that "[t]he range of penalties for similar offenses is Reprimand to Removal" and that Mr. Crock was proposing a three-day suspension. (*Id.* ¶ 5). Plaintiff was given seven days or until September 14, 2005 to submit a reply to the Notice, in person or in writing, to Gary Jebsen, Head of Ship Signatures Department, Code 70. (*Id.* ¶ 7).

Plaintiff acknowledged receipt of this Notice on September 7, 2005 (ECF No. 25-6, at 4), and on September 8, 2005, he emailed a reply to Admiral Archer Macy, requesting that Admiral Macy rescind the Notice, (ECF No. 25-7). Admiral Macy responded the same day and informed Plaintiff that he was represented by

legal counsel in the matters discussed by Plaintiff in his email and therefore, all correspondence should be directed to his legal counsel. (ECF No. 25-8). On Wednesday, September 14, 2005, Plaintiff sent an email to Mr. Crock, requesting an additional four hours of official time that day to work on his reply to the Notice. (ECF No. 25-9). Mr. Crock denied Plaintiff's initial request. (*Id.* at 1). Plaintiff then sent another email to Mr. Crock, requesting four hours of official time on Thursday, September 15, 2005, to work on his reply, and this request was granted. (*Id.* at 2). On November 22, 2005, the proposed suspension was mitigated to a letter of reprimand. (ECF No. 36-16).

Plaintiff cannot establish a *prima facie* case of discrimination. First, Plaintiff has not shown that he was subjected to an adverse employment action. The letter of reprimand, by itself, does not constitute an adverse employment action. *See, e.g.*, *Muldrow v. Blank*, No. PWG-13-1200, 2014 WL 938475, at *10 (D.Md. Mar. 10, 2014); *Amirmokri v. Abraham*, 437 F.Supp.2d 414, 423 (D.Md. 2006); *Allen v. Rumsfeld*, 273 F.Supp.2d 695, 705 (D.Md. 2003). The record contains no indication that Plaintiff suffered any detrimental effect because of the letter of reprimand. Additionally, the record includes no evidence that others outside of Plaintiff's class were treated more favorably. Plaintiff presents no evidence of

other similarly situated employees who did not receive a Notice of Proposed Suspension or a letter of reprimand.

Even if Plaintiff could establish a *prima facie* case, he cannot prove that Defendants' legitimate, nondiscriminatory reason for the actions were pretext for discrimination. Plaintiff argues that Defendants "intentionally fabricated" the charges in the Notice in order to discriminate and retaliate against him and as part of a larger conspiracy by Defendants to impede Plaintiff's engagement in the EEO process. (ECF No. 36-1, at 13). Defendants contend that there is no evidence that the issuance of the Notice or any actions taken related to the Notice and Letter of Reprimand were done because of discrimination towards Plaintiff. Defendants argue that the evidence shows that the Navy had a legitimate nondiscriminatory reason for issuing Plaintiff the Notice based on his misuse of government time and resources and the fact that he had previously been warned that he was not to work on EEO matters outside of his defined days and times. (ECF No. 25-1, at 21-22). Defendants also contend that the Navy had legitimate, nondiscriminatory reasons for the related actions of refusing to rescind the Notice and denying Plaintiff's initial request for time to respond to the Notice. They assert that when Plaintiff finally decided to follow the appeal procedures outlined in the Notice, he was granted official time to reply to the Notice, and

21

after Defendants reviewed his reply, the Notice was mitigated to a letter of reprimand.

Plaintiff has not shown that Defendants' legitimate, nondiscriminatory reasons for issuing the Notice and Letter of Reprimand were a pretext. Plaintiff attaches several exhibits purporting to show that the time at which he sent the fax was actually within his allotted timeframe for work on EEO complaints and that he was justified in working on his coworker's computer because he was preparing for an EEO meeting. (*See, e.g.,* ECF Nos. 36-1, at 14-15; 36-9; 36-10; 36-11). None of the evidence Plaintiff provides, however, shows that the Navy intentionally fabricated the underlying charges in order to discriminate or retaliate against Plaintiff. Rather, the record indicates that Mr. Crock actually believed at the time of issuing the Notice that Plaintiff had violated the restrictions that were in place for Plaintiff's use of official time for working on EEO complaints. Moreover, the Notice directs Plaintiff to submit a reply to Gary Jebsen, not Admiral Macy, so it is no wonder that Admiral Macy refused to rescind the Notice. In addition, although Plaintiff's initial request for additional time to work on his reply was denied, there is no evidence that it was denied because of discrimination because Plaintiff's initial request was sent at the last minute, his subsequent request for additional time was granted, and Mr. Crock

specifically noted in granting this request: "Thank you for requesting ahead of time." (ECF No. 25-9).

### ii. Denial of Time to Discuss New EEO Complaint (Incident 6)

On Wednesday, October 5, 2005, Plaintiff asked Mr. Crock for three and half hours of official time to be used that day to meet with an EEO counselor to discuss a new EEO complaint. (ECF No. 25-10). Mr. Crock denied this request. (*Id.*). Plaintiff emailed Gary Jebsen on Thursday, October 6 to appeal Mr. Crock's denial, and to ask for one hour of official time to meet with an EEO Counselor the following Wednesday, October 12 because the EEO Counselor was unable to meet with Plaintiff that day during his pre-arranged 9 a.m. to 10 a.m. timeframe. (*Id.*). Mr. Jebsen responded the same day, and informed Plaintiff that he was permitted to reschedule his Tuesday/Thursday one-hour EEO time periods to a time that was agreeable to Plaintiff and the EEO Counselor. (*Id.*). In addition, Mr. Jebsen sent Plaintiff a second email on Tuesday, October 11 which stated in relevant part: "Yuri, Captain Behrle has asked me to respond to your request to him for official time. As I stated earlier, you may utilize either or both of your two hours of official time this week to meet with the EEO counselor. . . . Should your counseling session on Wednesday require additional time, please contact Bruce and request additional time. . . . To our

knowledge, there is currently no hearing scheduled before an EEO or district court judge.  As you know, you have been provided two hours of official time each week for EEO related matters. In the aggregate, you have had sufficient time to respond/prepare for any on-going matters." (ECF No. 25-11).

Plaintiff has not established a *prima facie* case because the denial of additional time to work on an EEO complaint is not an adverse employment action.  The denial of his request did not adversely affect the "terms, conditions, or benefits" of his employment. *James*, 368 F.3d at 375.  Courts have consistently found much more significant employer action to not be an adverse employment action. *See, e.g., id.* at 376 (stating that an involuntary reassignment is not necessarily an adverse employment action); *Thorn v. Sebelius*, 766 F.Supp.2d 585, 599 (D.Md. 2011) (finding that removal of responsibilities, absent material alteration in "title, salary, supervisory responsibilities, or opportunity for promotion" was not an adverse employment action).  The denial of additional time to work on EEO complaints is not akin to "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion," *see Boone v. Gordin*, 178 F.3d at 255, and had no material impact on his current job or his future job prospects.

Defendants argue that, even if Plaintiff could establish a *prima facie* case, his claim that he was denied official time to meet with an EEO counselor because of his national origin or age is meritless because Plaintiff cannot show any discriminatory intent in denying his request for additional time. Plaintiff contends that the February 2015 Order from the EEOC Administrative Judge and EEOC Regulations required Defendants to give him a "reasonable amount of official time" to prepare complaints and respond to EEOC requests for information. (ECF No. 36-1, at 25-27). Plaintiff further argues that Defendants discriminated against him and violated EEOC regulations by denying his requests on October 5 and 6, 2005 for additional time to meet with an EEO Counselor.

Plaintiff has provided no support that he was denied official time to respond to EEO complaints due to a discriminatory reason. First, Mr. Jebsen's response fully comports with the EEOC Memorandum and Order issued on February 16, 2005. This Order rejected Plaintiff's request for ten hours of official time per week to work on his complaints of discrimination, and noted that: "Complainant will continue to receive two hours per week to work on his EEO complaints, with additional time as necessary for meetings and depositions. As ordered previously in prior cases, Complainant may be provided, if necessary, two additional hours per week (for a total of 4

25

hours per week), for the two weeks preceding a formal hearing at the EEOC in Baltimore, Maryland." (ECF NO. 25-12, at 4). Plaintiff does not indicate that he had an upcoming hearing or deposition. Moreover, Mr. Jebsen did not deny Plaintiff's entire request; rather, he granted Plaintiff permission that week to move his pre-arranged two hours of official time to Wednesday, October 12, and noted that if the meeting ran over, Plaintiff could ask for additional time from Mr. Crock. Defendants' responses to Plaintiff's October 5 and October 6 requests for additional time were entirely reasonable given the circumstances and do not evidence that Defendants discriminated or retaliated against Plaintiff or that they violated the EEOC's Order or regulations, which required that Plaintiff be given a *reasonable* amount of time to work on his complaints.

### iii. Change in Bargaining Unit Status Code (Incident 7)

On August 26, 2005, Plaintiff was issued a copy of a Notice of Personnel Action, which informed him that his Bargaining Unit Status ("BUS") code had been changed from 8888 to 7777. (ECF No. 25-13). After Plaintiff received the notice, he emailed Jackie Yeager, a Human Resources Advisor at NSWCCD, inquiring about the change to his BUS code. (ECF No. 25-14). She responded that Human Resources "has been correcting data elements that are wrong in employees' records[,]" including BUS codes, and that Plaintiff's "BUS code was changed because [he]

26

meet[s] the definition of Code 7777." (*Id.*). Ms. Yeager also explained the differences between BUS codes 7777 and 8888:

> All Supervisory, Managerial, Confidential and Personnel Positions (Except Clerical) should be 8888.

> All Other Non-Supervisory General Schedule/DEMO and Wage Grade Positions not covered by a bargaining unit should be 7777.

> [C]ode "7777" indicates [that] you are eligible but not in a bargaining unit. Code "8888" indicates you are ineligible for inclusion in a bargaining unit.

(ECF No. 25-14). Ms. Yeager was also interviewed about the BUS code change after Plaintiff filed an initial EEO complaint regarding this matter. She explained during this interview that a supervisor is "an employee who is responsible for (1) supervising other employees, (2) preparing performance standards and appraisals, (3) assigning work to other employees, and (4) approving leave for employees." (ECF No. 25-15, at 5). Ms. Yeager stated that Plaintiff's title was "Scientist" and even though Plaintiff asserts he is a "program manager" that still does not make him a supervisor. (*Id.*). According to Ms. Yeager, "program managers are responsible for managing programs and not employees" and even though Plaintiff may assign some work to employees, he still did not have authority to approve leave or prepare performance standards and appraisals. (*Id.*). In addition, Ms. Yeager explained that Human Resources began

27

correcting employees' records, including their BUS Codes, starting in May 2005, and that it corrected BUS Codes for approximately 170 employees, including twenty employees in Code 70, where Plaintiff works.  Ms. Yeager also stated that as part of this records correction process, Human Resources "looked at the addendums for employees to see if they supervised people, and if they did not, the BUS codes were made 7777." (ECF No. 25-15, at 5).  She also stated that if Human Resources was unsure whether the employee was a supervisor, they would contact the employee's office to verify what work the employee actually performed.

Plaintiff states that he had the same BUS Code of 8888 from 1989 until August 2005 when it was changed to 7777.  (ECF No. 36-19 to 36-21).  Plaintiff argues that he was the only employee on a managerial track to have his BUS Code downgraded, and that Human Resources refused to provide a list of other similarly situated employees who were on a managerial track in a ND-4 position that had their BUS Codes changed.  (ECF No. 36-1, at 28).  According to Plaintiff, Defendants changed his BUS Code in 2005 to discriminate and retaliate against him for the EEO complaints he filed between 2002 and 2005, and that Defendants' stated reasons for changing his BUS Code are pretextual.

Defendants argue that Plaintiff has failed to establish a *prima facie* case as to this Incident because he cannot show that

28

the BUS Code change was an adverse employment action.   In
addition, Defendants argue that Plaintiff cannot demonstrate
that he was treated differently than other persons outside of
his protected classes because 170 other employees, including
twenty employees in Plaintiff's Code 70 section, also had their
BUS codes corrected.

Plaintiff fails to establish a *prima facie* case of
discrimination based on his BUS code change because he has
provided no evidence that it had any adverse impact on the terms
or conditions of his employment.   Mr. Stoyanov makes only
conclusory allegations in his complaint that his BUS code change
diminished his employment status, because it did not correspond
to his managerial career path, and harmed his prospects for
advancement, promotion, and equal employment opportunities.
(ECF No. 1 ¶ 84).   Plaintiff provides no evidence, however, that
the change in his BUS Code had any actual impact on his pay or
his prospects for promotion.   Moreover, as explained by Ms.
Yeager in Human Resources, BUS Codes correspond to whether or
not employees served in a supervisory role, and Plaintiff has
also not provided any evidence to support that he fit the Navy's
criteria as a supervisor, and therefore, should have had a BUS
Code of 8888.   Although Plaintiff makes the speculative
assertion that he was the only employee on a managerial track to
have his BUS Code changed, interestingly, he makes no assertions

that he was the only person over forty or of Russian heritage to have his BUS Code changed.   Indeed, Plaintiff has provided no evidence that his BUS Code change had anything to do with his age or national origin.   Moreover, Plaintiff's assertion that he was singled out by Defendants because of his prior engagement in protected activities is unsupported because Human Resources changed 170 employees' BUS Codes, including twenty employees' BUS Codes in Plaintiff's unit, during the same time period that they changed Plaintiff's code.

> **d.   Failure to Promote to ND-5 Program Manager (Incident 1 and Incidents 8 through 13)**

Incident 1 and Incident 8 through 13 are based on Plaintiff's allegations that Defendants failed to promote or assign him to an ND-5 Program Manager position in Code 70 and instead promoted or assigned other employees with inferior qualifications to the position.   To establish a *prima facie* case of discrimination based on a failure to promote, Plaintiff must show that he:   (1) is a member of a protected class; (2) applied for the position in question; (3) was qualified for each position; and (4) was rejected for each position under circumstances giving rise to an inference of unlawful discrimination.   *Anderson v. Westinghouse Savannah River Co.,* 406 F.3d 248, 268 (4th Cir. 2005).   In addition, in assessing an ADEA failure to promote claim, a plaintiff must establish that

30

the individual selected for the position was substantially younger than he. *See O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 312-13 (1996). Plaintiff argues that he should have been promoted in each of the following instances.

### i.   Incident 1

In August 2005, James Keogler, an ND-5 employee retired. (ECF No. 25-4, at 6). Mr. Keogler was the Department of Navy's program manager responsible for resolving problems with the shipbuilder during the construction of Virginia Class submarines, including funding, programmatic, and equipment installation issues. (*Id.*). Aisha Jenkins was one of three employees in Code 7210 who worked as a liaison officer responsible for traveling to the shipyards as a "front person" in attempt to resolve issues. (*Id.*). When Mr. Keogler retired, his duties were downgraded to an ND-4 level, transferred to code 7210, and his ND-5 position was abolished. (*Id.*). Ms. Jenkins, who was already an ND-4 in code 7210, assumed a small set of Mr. Keogler's duties as an ND-4. (*Id.* at 6-7). The Department of the Navy then amended the Addendum to Ms. Jenkin's position description to reflect her change in duties continuing at the ND-4 level. (*Id.* at 6). Mr. Samuel McKeon, Branch Head of Code 7210, was interviewed by an EEO counselor following Plaintiff's filing of an EEO complaint related to this incident. Mr. McKeon stated that he selected Ms. Jenkins because she was one of

several persons in 7210 familiar with Mr. Keogler's duties, and because she was considered "the most competent of the employees in c/7210 based on her experience and skills in the area." (ECF No. 25-4, at 7).

Defendants argue that the reassignment of Mr. Keogler's duties was permitted under the Carderock Instruction NSWCCD 12335.2 (Merit Staffing Program policy) and 5 C.F.R. § 335.102(a), which permits NSWCCD to reassign a career-conditional employee within their grade level. (ECF No. 25-5, at 4-7). In addition, Defendants argue that Plaintiff has provided no evidence of discrimination as to Ms. Jenkins' reassignment, as Plaintiff was not even a member of Mr. McKeon's staff at the time Ms. Jenkins was reassigned a portion of Mr. Keogler's duties. Moreover, they argue that the Navy had a legitimate, nondiscriminatory reason for reassigning the work to Ms. Jenkins — it was based on her competence and ability to complete the work. (ECF No. 25-1, at 20). Plaintiff argues that Ms. Jenkins reassignment was done in secret without any vacancy announcement in order to deny him a promotion. (ECF No. 36-1, at 8). Plaintiff argues that the Carderock Instruction 12335.2 requires the Navy to post positions and assignments leading to promotions in order to select the most qualified applicant. (*Id.*). He also argues that he was the best candidate

32

for this position, and lists some of his experience. (*Id.* at 9).

Plaintiff has failed to establish a *prima facie* case for this claim because he cannot establish that he was not selected for the position under circumstances giving rise to an inference of unlawful discrimination.  As this court has previously held:

> to create an inference of discrimination, a plaintiff must at least demonstrate that [his] rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolutely or relative lack of qualifications or *the absence of a vacancy in the job sought.*

*Agelli v. Sebelius*, No. DKC 13-497, 2014 WL 347630, at *4 (D.Md. Jan. 30, 2014) (quoting *Moore v. Leavitt*, No. WDQ 04-2819, 2007 WL 5123539, at *4 (D.Md. Feb. 9, 2007)) (emphasis added).  The current case is almost analogous to *Agelli*.  Mr. Keogler's position was abolished following his retirement.  What remained of his duties was downgraded and reassigned to another employee within his division at a lower pay level.  The ND-5 position Plaintiff applied for ceased to exist.  "When a government agency cancels a vacancy announcement and no one outside the protected class is hired to fill the position, the plaintiff cannot establish [his] prima facie case because [he] cannot satisfy the fourth prong of the analysis." *Id.* at *4 (citing *Bowie v. Ashcroft*, 283 F.Supp.2d 25, 31 (D.D.C. 2003).  For the

foregoing reasons, Defendants' motion for summary judgment on Incident 1 will be granted as to Counts I and III.

### ii.  Incidents 8 through 13

Plaintiff contacted an EEO counselor on October 13, 2005 to report that he had been discriminated against on the basis of age, national origin when Defendants failed to promote him to several ND-5 Program Manager positions, which were given to younger, American-born employees who had not participated in EEO activity.  (ECF No. 25-15, at 2).  When interviewed by the EEO counselor during the subsequent investigation, Mr. Stoyanov stated that he had discovered on September 23, 2005 that Defendants promoted the following younger, purportedly American-born employees to ND-5 Program Manager positions, instead of selecting him:  Michael Monkevich, John Wojno, Drew Meyer, Michael Schildt, Robert Green, and Joseph Hollman.[4]  Plaintiff stated that he received a file from an EEO counselor apparently in response to a previous request.  The file contained a list of all promotions within Code 70 to ND-5 positions for the three previous years, and he did not know that six of the persons on the list had been promoted or that the positions they were given

---

[4] According to the EEO complaint, Michael Monkevich is 13 years younger than Plaintiff; John Wojno is 10 years younger than Plaintiff; Drew Meyer is 2 years younger than Plaintiff; Michael Schildt is 2 years younger than Plaintiff; Robert Green is 3 years younger than Plaintiff; and Joseph Hollman 7 is years younger than Plaintiff.  (ECF No. 25-15, at 4).

had been vacant.   (ECF No. 25-15, at 3).   Plaintiff asserted that he did not recall seeing these positions advertised, and if he had he would have applied for them.   Plaintiff also asserted that "he is more qualified for each of the positions than the persons selected." (*Id*.).   Plaintiff "did not indicate what he believed the qualifications of any of the selectees were, but he stated that he believed that all of the individuals were selected primarily because they were young and American-born, as well as to retaliate against Dr. Stoyanov for his prior EEO activity." (*Id*.).

As part of the investigation of this EEO complaint, the EEO counselor also interviewed Mary Fowler, an Administrative Officer in Code 70.   Ms. Fowler stated that all of the positions named by Plaintiff were advertised on the Department of Navy Human Resources website, and that Plaintiff should have been aware of the positions when they were advertised.   (ECF No. 25-15, at 5).   She also stated that the Human Resources Service Center: "certifies candidates for vacant management positions using . . . RESUMIX, an automated retrieval system.   She explained that with RESUMIX, employees send their resumes to [the Human Resources Service Center] and [it] chooses candidates using a generic [vacancy announcement], and that no specific announcement is posted.   According to Ms. Fowler, the persons named by Dr. Stoyanov were selected for six manager positions

35

that were advertised by two open and continuous announcements." (*Id.*).

Defendants' only argument in response to these claims is that they should be dismissed because Plaintiff failed to report timely the alleged discriminatory promotions to an EEO counselor within 45 days of the personnel actions or the date on which Plaintiff became aware or should have been aware of the claims.[5] (ECF No. 25-1, at 25-27). Defendants assert that all six positions were advertised on the Navy's Human Resources website and that Plaintiff therefore, should have been aware of the positions when they were advertised. Defendants further contend that Plaintiff was provided an employee list in July 2005 as part of a Report of Investigation ("ROI") that contained the current grades of four of the employees — Monkevich, Wojno, Greene, and Schildt — and acknowledged receipt of this information on August 13, 2005. (ECF Nos. 25-16 and 25-17). In addition, Defendants argue that every member of Code 70, including Plaintiff, received emails in November and December 2004 concerning the other two employees' promotions (Meyer and Hollman). (ECF Nos. 25-18 and 25-19).

Plaintiff argues that the date of selection of these employees for promotion was listed for the first time in a

---

[5] Plaintiff's *prima facie* case appears to be, at best, tenuous. However, Defendants do not challenge the *prima facie* case, relying entirely on the timeliness argument.

September 2005 ROI that he received, and that all prior reports he received were incomplete. Plaintiff argues that Defendants intentionally sent him incomplete data in his ROI requests in order to conceal ND-5 promotions. Plaintiff further contends that he did not know about any of the challenged promotions and had no reason to know of them, as they were not announced or listed in prior agency responses. (ECF No. 36-1, at 29-30).

Defendants have provided evidence that Plaintiff should have been aware of Mr. Meyer's promotion, as they attach an email that was sent to all members of Code 70 announcing Mr. Meyer's promotion. (ECF No. 25-19). Accordingly, Plaintiff's claim (Incident 10) challenging Mr. Meyer's promotion is time-barred because he failed to contact an EEO counselor within 45 days of receiving an email on December 2, 2004, notifying him of Mr. Meyer's promotion, which should have put Plaintiff on notice of this promotion. 29 C.F.R. §§ 1614.105(a); *see also Wyse v. Summers,* 100 F.Supp.2d 69, 74 (D.Mass. 2000) ("The critical inquiry in evaluating a claim of lack of timeliness is when the plaintiff knew or should have known that she was being discriminated against; a plaintiff cannot avoid the statute of limitations if plaintiff is on inquiry notice of discrimination.").

When an individual "did not know and reasonably should not have [] known that the discriminatory matter or personnel action

occurred," however, then the 45 day time limit for initiating contact with the EEO is extended. 29 C.F.R. § 1614.105(a)(2). Evidence provided by Defendants that purports to show that Plaintiff should have been on notice of the other promotions in July and August 2005 is not conclusive. (ECF Nos. 25-16, 25-17, 25-18). For example, although Defendants argue that Plaintiff received an email notifying him of Mr. Hollman's promotion, the email their motion cites is merely a vacancy announcement; it does not indicate that Mr. Hollman received a promotion or even that the vacancy was filled. (ECF No. 25-18). There is no email in the record that announces Mr. Hollman's promotion. Additionally, the employee list sent as part of the July ROI (ECF No. 26-16) was incomplete and not sufficient to put Plaintiff on reasonable notice of the employment actions. It includes the employees' names, titles, and grades, but it does not include the vacancy or position they filled or the dates of their promotions. The list, absent additional information, is not sufficient to put Plaintiff on reasonable notice of the personnel action at issue. Plaintiff's claims regarding the promotions of Mr. Monkevich, Wojno, Schildt, Hollman, and Green are not time-barred (Incidents 8, 9, 11, 12, and 13). For the foregoing reasons, Defendants' motion for summary judgment on Incidents 8, 9, 11, 12, and 13 will be denied as to Counts I and

III.  Defendants' motion for summary judgment on Incident 10 will be granted as to Counts I and III.

## III. Retaliation Claims (Count II)

Plaintiff asserts that he was retaliated against in violation of Title VII based on all of the incidents discussed above.  Title VII prohibits retaliation by the employer against employees, who engage in a protected activity.  42 U.S.C. § 2000e-2(a).  Protected activity includes opposing "unlawful employment practice[s] [under] this subchapter" or "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in . . . [a Title VII] investigation, proceeding, or hearing[.]"  42 U.S.C. § 2000e-3(a).  To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that:  (1) he engaged in a protected activity, (2) an adverse employment action was taken against him, and (3) the protected activity was causally connected to the adverse action.  *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (citing *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997)).  Unlike a discrimination claim, a plaintiff need not establish an "ultimate employment decision" to make out his *prima facie* case; rather, he must show only that the action would be seen as materially adverse through the eyes of a reasonable employee.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  Actions like "petty slights, minor annoyances, and

39

simple lack of good manners" are insufficient to support a retaliation claim, even under this lower standard. *Id.* "Because Plaintiff has presented no direct evidence of retaliation, his retaliation claims will be analyzed under the *McDonnell Douglas* framework." *Staley v. Gruenberg*, 575 F.App'x 153, 155 (4th Cir. 2014) (citations and internal quotation marks omitted).

Plaintiff's retaliation allegations and Defendants' responses track closely with the aforementioned discrimination claims. Plaintiff argues that, in addition to being because of his age and national origin, the above actions were taken in retaliation for his engagement in a protected activity. Defendants put forth the same opposition as above and also argue that Plaintiff has not established a *prima facie* retaliation claim because the actions would not be materially adverse to a reasonable employee and there is no causal connection between the actions and Plaintiff's participation in protected activity.

Plaintiff fails to establish a *prima facie* retaliation case for all claims other than the failure to promote claims because a reasonable employee would not view Defendants' actions as materially adverse. A reasonable employee would not have thought the incidents relating to the Notice of Proposed Suspension and the letter of reprimand (Incidents 2 through 5), when viewed together, were materially adverse. The initial

Notice of Proposed Suspension and subsequent appeal process was not more than a "minor annoyance." *Burlington*, 548 U.S. at 68. The letter of reprimand itself, even when assessed under the reasonable employee standard, is not an adverse employment action. *See, e.g.*, *Mackall v. Colvin*, No. ELH-12-1153, 2015 WL 412922, at *25 (D.Md. Jan. 29, 2015) (finding that a letter of reprimand and a poor performance evaluation, even if they lead to ineligibility for a bonus, do not constitute an adverse employment action in a retaliation case); *Muldow*, 2014 WL 938475, at *10 (stating that, "[e]ven with the lower bar" for retaliation claims, neither a "formal letter of reprimand" nor "a proposed termination" is an adverse employment action) (citing *Rock v. McHugh*, 819 F.Supp.2d 456, 470-71 (D.Md. 2011)). A reasonable employee also would not view the denial of Plaintiff's request for additional time to work on an EEO complaint as materially adverse. Plaintiff's supervisors were flexible in allowing Plaintiff to adjust the scheduling of his existing time, and the denial of additional time was, at most, a "petty slight" or "minor annoyance." *Burlington*, 548 U.S. at 68. Similarly, a reasonable employee would not view the change of Plaintiff's bargaining unit status code as materially adverse or causally related to his protected activity. Plaintiff provides no evidence that the change in his code had any impact whatsoever on his employment. *See Mackall*, 2015 WL 412922, at

*23 ("Title VII's 'antiretaliation provision protects an individual not from all retaliation, but from retaliation that *produces an injury or harm.'*") (emphasis added) (quoting *Burlington*, 548 U.S. at 64). The change was merely a correction to employees' records, and Plaintiff was one of approximately 170 employees, including twenty in Plaintiff's unit, that was affected.

Additionally, as discussed above, Plaintiff fails to establish a *prima facie* retaliation case for failure to promote to Mr. Keogler's position because the position was abolished (Incident 1). Finally, Plaintiff's retaliation claim regarding Mr. Meyer's promotion is time-barred (Incident 10).

Plaintiff's claims of retaliation for failure to promote to the ND-5 positions filled by Michael Monkevich, John Wojno, Michael Schildt, Robert Green, and Joseph Hollman (Incidents 8, 9, 11, 12, and 13) survive summary judgment. Defendants' only argument against these retaliation claims is that a reasonable employee would not find the failure to promote materially adverse "because [Plaintiff] failed to timely complain about the allege[d] discriminatory acts" (ECF No. 25, at 28), but this argument is not tenable. Plaintiff's alleged failure to complain in a timely manner is not relevant to whether a reasonable employee would have thought the failure to promote was an adverse employment action. Conversely, courts

42

consistently find that a failure to promote is a sufficient adverse employment action to establish a *prima facie* case. *See, e.g.*, *Hawkins v. Leggett*, 955 F.Supp.2d 474, 486 (D.Md. 2013) (stating that "[t]he Court also generally assumes that the failure to promote an employee constitutes a materially adverse action" in a retaliation claim). Defendants also allege that, even if Plaintiff could establish a *prima facie* case, Defendants provided non-discriminatory reasons for the selection of other applicants over Plaintiff. Such justifications, however, are not found in the record with respect to these incidents.

## IV. Plaintiffs' Motions

Prior to opposing Defendants' motion to dismiss or for summary judgment, Plaintiff filed four motions, all of which will be denied.

In the first two motions, Plaintiff moves to compel Defendants to take certain actions. (ECF Nos. 29 and 30). Plaintiff moved to compel "Defendants to certify under penalty of perjury [that] the content of Defendants' correspondence [is] accurate and true." (ECF No. 29). Plaintiff purportedly submitted this motion because Defendants' counsel, John Sippel, submitted an "intentionally fraudulent Memorandum in support of [Defendants'] motion to dismiss" that contained "numerous deliberate misrepresentations." (*Id.* at 1). Plaintiff also asserts that Mr. Sippel requested several extensions of time to

file a response to Plaintiff's complaint without first making a "good faith effort" to contact Plaintiff, which purportedly violated Local Rule 105.9, and asks the court to "provide relief." (*Id.* at 3). In a separate motion, Plaintiff moves to compel Defendants to "send confirmation of Defendants' correspondence" to him by certified mail or to notify him by telephone each time Defendants make a filing. (ECF No. 30).

Plaintiff's motions to compel will be denied. First, Plaintiff merely makes speculative assertions that Defendants' counsel included false or fraudulent misrepresentations in the motion to dismiss without providing any support for these assertions. Moreover, Local Rule 105.9 does not require that counsel contact *pro se* parties before filing a motion for extension of time; rather, it provides that: "[w]here counsel deems it reasonably practicable, counsel . . . shall try to obtain the consent of an unrepresented party" before filing for an extension of time. Local Rule 105.9. Even if Defendants had contacted Plaintiff prior to submitting their motions for extension of time and Plaintiff had objected, these motions would have still been granted, as Defendants' rationale for asking for extensions was reasonable. Finally, Plaintiff's request that Defendants be compelled to notify him of all correspondence filed with the court will be denied, as Local Rule 102(c) and Fed.R.Civ.P. 5(a)(1)(D) already require that all

written motions be served on every party.  Here, Plaintiff was
notified each time Defendants filed motions for extensions of
time, as each motion includes a certificate of service
indicating that Defendants mailed a copy of each motion to
Plaintiff's address (ECF Nos. 19, at 3; 21, at 3; 23, at 3).

Plaintiff also moves to sequester David Caron by invoking
Federal Rule of Evidence 615.  (ECF No. 31).  Plaintiff argues
that Mr. Caron is a "crucial witness in the civil actions filed
by Plaintiff with this Court, [and therefore] it is
inappropriate for Caron to be present at proceedings [such as
depositions and future hearings] when testimony and trial theory
may be offered."  (ECF No. 31, at 1).  Rule 615 provides, in
pertinent part, that "[a]t a party's request, the court must
order witnesses excluded so that they cannot hear other
witnesses' testimony."  Fed.R.Evid. 615.  Rule 615 "and its
common-law antecedents are designed to prevent the tainting of
witness testimony by precluding them from hearing the *trial
testimony* of other witnesses."  *United States v. Cropp*, 127 F.3d
354, 363 (4th Cir. 1997) (emphasis added).  The Fourth Circuit
has noted that Rule 615's "plain language relates only to
'witnesses,' and it serves *only* to exclude witnesses *from the
courtroom*."  *United States v. Rhynes*, 218 F.3d 310, 316 (4th Cir.
2000) (en banc) (emphasis added).  Plaintiff's motion expresses,
*inter alia*, concern for Mr. Caron's presence in depositions, but

45

Rule 615 does not apply to depositions. *See* Fed.R.Civ.P. 30(c)(1). This court does, however, have a guideline in our Local Rules limiting those who can be present at a deposition to individual parties, representatives of non-individual parties, expert witnesses, and counsel. Local Rules App'x A, at 6(h). Unless Mr. Caron serves in one of those capacities, he would not automatically be entitled to attend at deposition. Plaintiff also references hearings from past civil actions he has filed with this court (ECF No. 31, at 1), but such prior actions are not relevant to the pending motion in the current case. At the current time, Plaintiff's broad blanket sequestration request is premature and will be denied. If a trial is held, Plaintiff may invoke Rule 615.

Finally, Plaintiff moves to disqualify Defendants' counsel, John Sippel, arguing in a conclusory fashion that Mr. Sippel has "abused [his] position, intentionally corrupted proceedings, violated court rules, violated laws, deliberately misrepresented facts in his filings with the court and intentionally harmed Plaintiff." (ECF No. 32, at 2). As noted by the undersigned and Judge Nickerson in previous cases by Plaintiff denying virtually identical motions, "Plaintiff supports this motion with nothing more than vague, subjective, and unsubstantiated allegations of misconduct. Absent some specific evidence of wrongdoing, the extraordinary relief sought is unwarranted."

*See Stoyanov v. Mabus*, No. DKC 07-1953, 2012 WL 1957841, at *2 (D.Md. May 30, 2012).  Although Plaintiff attaches his own declaration to this motion (ECF No. 33), Plaintiff makes the exact same assertions in his declaration as he does in the motion and provides no additional factual details to support disqualification.  Accordingly, Plaintiff adds nothing to the current motion to justify a different outcome than his previous motions seeking disqualification of Mr. Sippel.

**V.   Conclusion**

For the foregoing reasons, Defendants' motion to dismiss or in the alternative, for summary judgment, will be granted in part and denied in part.  Plaintiffs' motions will be denied.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
